UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAPHAEL P. STRADWICK,

    Petitioner,

                                   CIVIL CASE NO. 06-10020

v.                               HONORABLE PAUL V. GADOLA

                                   UNITED STATES DISTRICT JUDGE

CAROL HOWE,

    Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## THE PETITION FOR WRIT OF HABEAS CORPUS

Raphael P. Stradwick, ("Petitioner"), presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-degree murder, M.C.L § 750.316; and possession of a firearm in the commission of a felony, M.C.L. § 750.227b. For the reasons stated below, Petitioner's application for writ of habeas corpus is **CONDITIONALLY GRANTED**.

**I.    Background**

Petitioner was convicted following a jury trial in the Detroit Recorder's Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> This case arises out of the fatal shooting of Gerald Wilson on October 30, 1993. Wilson and his girlfriend, Gia Marable, arrived at Gregory Wright's house during that evening. [Wright was charged as a co-defendant, but died before Petitioner's trial]. Wilson entered the house followed by Edwin Culp while Marable waited in the car. A number of other individuals were also present at the house at this time. Several minutes later, a struggle ensued between Wilson and Wright in the presence

of defendant and Culp. Wright instructed defendant to shoot Wilson, and defendant fired the revolver several times killing Wilson. Thereafter, Culp exited the house and informed Marable that "they just shot G," referring to Wilson; however, Culp did not indicate who "they" was. Immediately after the shooting, Wright noticed Marable waiting in the car and instructed defendant to kill her, but defendant did not comply and Marable left unharmed.

Later that evening, the police discovered Wilson's body lying on the ground in an alley near Wright's house. The police noticed a trail of blood leading from the body to Wright's house. The officers followed the trail of blood into the house, and after conducting a search did not find anybody inside, but did find several weapons and ammunition, as well as a blood stained leather jacket. These items were seized and preserved as evidence.

Several days later, the police paged Culp and Culp went to the police station and gave a statement regarding the incident. Culp's statement implicated defendant, and an arrest warrant was issued for defendant. The police were subsequently informed that defendant may have traveled to Toledo, Ohio, and thus, a federal unlawful flight warrant was issued. A few days later, defendant was discovered by a federal agent outside a residence in Toledo. Defendant was apprehended and transported back to Michigan.

At the time of trial, Culp was a federal fugitive and neither federal nor state authorities had been able to locate him. Since Culp's was the only testimony directly implicating defendant in the crime, the trial court conducted a due diligence hearing to determine whether Culp was "unavailable" for purposes of trial, and whether his preliminary examination testimony should be read into evidence. At the hearing, the prosecution presented testimony from a Detroit police officer and a special agent of the Drug Enforcement Administration regarding the efforts made to locate Culp independent of, and in conjunction with, preparation for defendant's trial. Importantly, a federal warrant had been issued for Culp's arrest, and checks with the local utilities and agencies, and at Culp's mother's home, failed to locate him. Despite concerns about the sloppiness of some of the pretrial efforts by law enforcement, the trial court found nevertheless that under the unique circumstances in this case, the prosecutor had exercised due diligence in attempting to locate Culp. Culp was therefore declared "unavailable" and his preliminary examination testimony was admitted into evidence.

*People v. Stradwick,* No. 194258, at *1-2 (Mich. Ct. App. Sept. 17, 1999).

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 616 N.W.2d 689 (2000).

Petitioner thereafter filed a post-conviction motion for relief from judgment, which was denied.

2

*People v. Stradwick*, No. 94-001659 (Wayne Cty. Cir. Ct. Sept. 21, 2004). [1] The Michigan appellate courts denied Petitioner leave to appeal. *People v. Stradwick*, No. 259671 (Mich. Ct. App. June 24, 2005); *lv. den.* 706 N.W.2d 25 (2005).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner was deprived of his Sixth Amendment right to a speedy trial when his trial was delayed for more than two years.

II. Petitioner was deprived of the effective assistance of counsel on appeal where appellate counsel failed to litigate the fact that this Petitioner suffered a constructive denial of counsel during the preliminary examination where defense counsel jointly represented this Petitioner and Codefendant Gregory Wright.

III. Petitioner was deprived of his Sixth Amendment right to confrontation by the admission of the preliminary examination testimony of Edwin Culp.

IV. Petitioner was deprived of his Sixth Amendment right to a fair trial when the trial court implied that defense counsel was engaging in "trickery."

V. Petitioner was deprived of his Sixth Amendment right when defense counsel failed to object to erroneous jury instructions.

VI. Petitioner's trial was rendered fundamentally unfair by the admission of unduly prejudicial evidence wholly irrelevant to the case.

## II.   Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] In 1996, the Michigan Legislature abolished the Detroit Recorder's Court and merged its functions with the Wayne County Circuit Court. *See Redmond v. Jackson,* 295 F. Supp. 2d 767, 769, n.1 (E.D. Mich. 2003) (citing *Anthony v. Michigan*, 35 F. Supp. 2d 989, 996-97 (E.D. Mich. 1999)).

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III. Discussion

The Court will discuss Petitioner's conflict of interest claim first, because this is the claim on which the Court is granting habeas relief.

In his second claim, Petitioner contends that appellate counsel was ineffective for failing to raise on appeal a claim that he was constructively denied the assistance of counsel, because Petitioner and the co-defendant were represented by the same attorney at the preliminary examination.

With respect to Petitioner's ineffective assistance of appellate counsel claim, this allegation is without merit, because appellate counsel did, in fact, raise a conflict of interest claim on Petitioner's appeal of right.[2] Appellate counsel also raised an issue that Petitioner's trial counsel

---

[2] *See* Defendant-Appellant's Brief on Appeal, Issue VI, pp. 19-20 [Part of this Court's Dkt. Entry # 30].

was ineffective for failing to object to the admission of Edwin Culp's preliminary examination testimony on the ground that Petitioner's original counsel was hampered by a conflict of interest resulting from his dual representation of Petitioner and the co-defendant.[3] Moreover, the Michigan Court of Appeals clearly addressed, and rejected, Petitioner's dual representation claim, finding that Petitioner had failed to establish that he was prejudiced by counsel's joint representation of himself and the co-defendant at the preliminary examination. *Stradwick*, Slip. Op. at *5. Accordingly, Petitioner has not shown that appellate counsel failed to raise the joint representation claim on his direct appeal, so as to sustain an ineffective assistance of appellate counsel claim.

This Court believes, however, that Petitioner's underlying conflict of interest claim merits relief. Although Petitioner labeled his second claim as involving a deprivation of the effective assistance of appellate counsel, Petitioner spent most of his second claim arguing the issue of the joint representation of himself and his co-defendant at the preliminary examination and how this deprived him of his right to the assistance of counsel at the pre-trial and trial level. The appropriate liberal construction of a *pro se* habeas petition requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation which may state a ground for federal relief. *See Franklin v. Rose*, 765 F. 2d 82, 84-85 (6th Cir. 1985). Federal courts may ignore the legal label that a *pro se* litigant attaches to a pleading and recharacterize the pleading or motion and place it within a different legal category, in order to avoid inappropriately stringent application of formal labeling requirements. *See Castro v. United States,* 540 U.S. 375, 381 (2003) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)). In addition, a habeas petitioner's *pro se* submissions should be construed liberally "to raise the strongest arguments that they suggest." *See Hoffenberg v. U.S.*,

---

[3] *See Id.*, Issue XVI-C, pp. 41-43.

5

436 F. Supp. 2d 609, 611 (S.D.N.Y. 2006) (holding that defendant's *pro se* motion to vacate sentence would be liberally construed to include conflict of interest claim).  Because Petitioner is representing himself in his habeas proceedings, and his conflict of interest claim has merit, this Court believes that this is an exceptional case that would justify extending the issue of Petitioner's second claim to include the underlying claim that he was deprived of the assistance of counsel at the preliminary examination because his attorney was laboring under a conflict of interest.  *See, e.g.*, *Weinberger v. United States*, 268 F.3d 346, 352 (6th Cir. 2001); *see also United States v. Valencia*, 188 Fed. Appx. 395, 399 (6th Cir. 2006).  Finally, this Court notes that the respondent addressed the underlying merits of Petitioner's dual representation claim.

Defense attorneys owe their clients a duty of loyalty, including the duty to avoid conflicts of interest.  *Strickland v. Washington,* 466 U.S. 668, 688 (1984) (*citing to Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)).  Conflicts of interest for attorneys representing criminal defendants are generally grouped into three categories: (1) concurrent representation (also referred to as joint, multiple, or simultaneous representation) of clients with conflicting interests, (2) successive representation of clients with conflicting interests (*i.e.*, when counsel has previously represented a co-defendant or trial witness), and (3) conflicts that pit the attorney's personal interests against those of the defendant.  *See Rugiero v. U.S.*, 330 F. Supp. 2d 900, 905 (E.D. Mich. 2004) (internal citations omitted).  It is well settled that when a concurrent representation conflict is at issue, the applicable legal standard is not the traditional ineffective-assistance-of-counsel standard set forth in *Strickland*, which requires a showing of prejudice (*i.e*., reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different); rather, it is the petitioner-favorable standard set forth in *Cuyler,* under which prejudice is presumed and the

petitioner need only show that there was an actual conflict that adversely affected his counsel's performance. *Cuyler*, 446 U.S. at 349-50; *Rugiero*, 330 F. Supp. 2d at 905; *Tyler v. United States,* 78 F. Supp. 2d 626, 631-32 (E.D. Mich. 1999). The rationale behind *Cuyler*'s presumption-of-prejudice rule is (1) the high probability of prejudice arising from the conflict and (2) the difficulty of proving that prejudice. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002).

The Sixth Circuit has "historically characterized" [*Cuyler v.*] *Sullivan* as requiring both an "actual conflict" and an "effect on representation" to establish a violation of the Sixth Amendment. *See McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004) (citing *Thomas v. Foltz*, 818 F.2d 476, 481-82 (6th Cir. 1987)). To prove that counsel's performance was affected by an "actual conflict," a habeas petitioner would have to show that his attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id.* (quoting *Thomas*, 818 F.2d at 481) (internal quotation omitted). In addition, " '[e]ffect on representation' meant that the conflict caused the attorney's choice, not that the choice was prejudicial in any other way." *Id.*

Moreover, "[A] defendant or habeas petitioner does not have to produce direct evidence, such as the lawyer's testimony, that the lawyer chose to do one thing rather than another in order to accommodate another client's interests. Causation can be proved circumstantially, through evidence that the lawyer did something detrimental or failed to do something advantageous to one client that protected another client's interests." *McFarland*, 356 F.3d at 706. "Both taking action and failing to take actions that are clearly suggested by the circumstances can indicate an adverse effect." *Id.* Although the Sixth Circuit has been quite rigorous in demanding more than the omission of a hypothetical or "potential" defense to establish adverse effect, *McFarland*, 356 F.3d

7

at 706, "[w]here counsel fails to pursue a strong and obvious defense, when pursuit of that defense would have inculpated counsel's other client, and where there is no countervailing benefit to the defendant from foregoing that defense or other explanation for counsel's conduct, these facts amount to evidence of disloyalty under any interpretation of *Sullivan*." *Id.* at 707.

In the present case, Petitioner claims he was deprived of the right to conflict-free counsel because he and the co-defendant were represented by the same attorney at the preliminary examination conducted on February 9, 1994. Respondent contends that Petitioner's dual representation claim is non-cognizable, because Petitioner does not have a constitutional right to a preliminary examination.

Respondent's argument is misplaced. The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (*quoting Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Moreover, adverse effects from a conflict of interest by an attorney's dual representation of a defendant and a co-defendant may manifest themselves not only at trial but during pretrial proceedings and such proceedings must be considered when examining a potential conflict of interest. *See Robinson v. Stegall*, 343 F. Supp. 2d 626, 637 (E.D. Mich. 2004) (*citing Holloway v. Arkansas*, 435 U.S. 475, 490-91 (1978)); *see also Williams v. Jones*, 391 F. Supp. 2d 603, 615 (E.D. Mich. 2005).

In *Robinson v. Stegall*, *supra*, another judge in this district found that a habeas petitioner's Sixth Amendment right to counsel had been violated when the petitioner and his co-defendant had been represented by the same attorney at the preliminary examination, which was waived in order to avoid an increase in the charges against the co-defendant. *Robinson*, 343 F. Supp. 2d at 637-38.

The court further found that the petitioner was adversely affected by the waiver of the preliminary examination, because a preliminary examination would have given the petitioner an opportunity to develop impeachment material at trial. *Id.* at 638-39.

In the present case, there was strong circumstantial evidence to suggest that Petitioner was adversely affected by the joint representation at the preliminary examination. The victim was killed at the co-defendant's house, where several guns were found. Edwin Culp was the only person to witness the shooting and therefore the only person who directly implicated Petitioner in the crime. A review of the preliminary examination transcript shows that counsel failed to ask Culp any questions about whether the co-defendant had any prior animus against the victim or whether any of the weapons found in the house belonged to the co-defendant. Counsel also failed to elicit any testimony from Culp to attempt to establish that Petitioner had no prior conflicts with the victim and that none of the weapons inside of the house were connected to the Petitioner. Counsel never challenged Culp's testimony that it was Petitioner, and not Wright, who possessed the murder weapon and shot the victim. All of this evidence could have been used to establish that it was the co-defendant, and not Petitioner, who was the actual shooter.

Further circumstantial evidence of an actual conflict is shown by the fact that defense counsel indicated at the arraignment on the information conducted only two weeks after the preliminary examination was conducted that he needed to speak to Petitioner and the co-defendant because he believed that he could no longer represent both men because of their potential defenses. (T. 2/25/1994, pp. 4-5). On March 16, 1994, counsel moved to withdraw as Petitioner's attorney because of the conflict of interest and asked for a two week continuance so that Petitioner's family could retain new counsel. (T. 3/16/1994, p. 4). At a subsequent status conference conducted on

March 30, 1994, counsel, who was still representing the co-defendant, asked the court on behalf of Petitioner for another continuance so that his family could hire counsel. During his request, counsel stated "[i]n reality, Mr. Stradwick has never had a lawyer." (T. 3/30/1994, pp. 4-5). Further circumstantial evidence that counsel's primary loyalty was to the co-defendant is evinced by the fact that he moved to withdraw from Petitioner's case and not the co-defendant's case. The court went ahead and appointed counsel for Petitioner to represent him until Petitioner decided what to do regarding new counsel.

Finally, although Petitioner was represented by new counsel at subsequent proceedings, including his trial, Petitioner was nonetheless adversely affected by original counsel's joint representation at the preliminary examination in light of the fact that Culp's preliminary examination testimony was admitted at trial when he was declared unavailable as a witness. Petitioner's new counsel at trial was unable to cross-examine Culp, due to his unavailablilty, leaving Petitioner and his trial counsel with the inadequate cross-examination of Culp which was conducted at the preliminary examination because of the conflict that Petitioner's original counsel was laboring under. Because Culp's preliminary examination testimony was the primary evidence against Petitioner at his trial, Petitioner was adversely affected by the joint representation at the preliminary examination. *Compare McKeldin v. Rose*, 631 F. 2d 458, 461 (6th Cir. 1980) (absence of counsel at petitioner's preliminary hearing did not warrant federal habeas corpus relief; the error was harmless as sole purpose of the preliminary hearing is to determine probable cause and not guilt, and Tennessee courts had found that petitioner was not prejudiced by absence of licensed attorney at his preliminary hearing).

The Sixth Circuit has held that when a defendant has suffered a Sixth Amendment violation,

the appropriate remedy is a new trial. *See Warner v. United States*, 975 F. 2d 1207, 1214-15 (6th Cir. 1992). In the present case, conflicted counsel denied Petitioner a fair trial, and the appropriate remedy is a new trial "free from the taint which plagued the initial trial." *Rugiero*, 330 F. Supp. 2d at 909; *see also Robinson*, 343 F. Supp. 2d at 645; *Tyler*, 78 F. Supp. 2d at 633. In order to remove any taint caused by conflicted counsel, this Court orders that the State of Michigan would be precluded from using Culp's preliminary examination testimony in *lieu* of his live testimony at any re-trial.

As the undersigned has stated previously, although "it may be popular for detractors to criticize the courts for granting relief based on apparent 'technicalities,' defenders of our system of justice know that the rights guaranteed by the Constitution are never mere technicalities. Here, upholding those rights requires vacating Petitioner's conviction and granting him a new trial." *Tyler*, 78 F. Supp. 2d at 633.

The Court will therefore order that the State of Michigan shall either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release Petitioner unconditionally. *See Mathis v. Berghuis*, 202 F. Supp. 2d 715, 725 (E.D. Mich. 2002).

Because this Court's conclusion that Petitioner is entitled to habeas relief on this claim is dispositive of the petition, the Court considers it unnecessary to review Petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger*, 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005); *aff'd*, 453 F. 3d 362 (6th Cir. 2006); *cert. den.*, __ S. Ct.__; 2007 WL 121562 (U.S. Mar. 19, 2007); *see also Haynes v. Burke*, 115 F. Supp. 2d 813, 819-20 (E.D. Mich. 2000).

**IV.     Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's application for writ of habeas corpus is **CONDITIONALLY GRANTED**.  Unless the State of Michigan takes action to afford Petitioner a new trial within **NINETY(90) DAYS** of the date of this opinion, the State of Michigan shall release Petitioner unconditionally from custody.

**SO ORDERED.**

Dated:   April 30, 2007                                        s/Paul V. Gadola
                                                              HONORABLE PAUL V. GADOLA
                                                              UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   April 30, 2007   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                              Laura A. Cook                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:        Raphael Stradwick        .

                                                              s/Ruth A. Brissaud
                                                              Ruth A. Brissaud, Case Manager
                                                              (810) 341-7845